UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

THERESE PALERMINO,

    Plaintiff,

    v.

OCWEN LOAN SERVICING, LLC,

    Defendant.

Civil Action No. TDC-14-0522

## MEMORANDUM OPINION

Plaintiff Therese Palermino alleges that Defendant Ocwen Loan Servicing, LLC ("Ocwen") violated the Maryland Consumer Protection Act (MCPA), Md. Code Ann., Com. Law §§ 13-301 to 13-501, and breached its contractual obligations. Pending is Ocwen's third Motion to Dismiss, ECF No. 45, in which Ocwen seeks dismissal of the second amended complaint filed by Palermino. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

### I.  Palermino's Loan History

In early 2010, Palermino was experiencing financial difficulties and applied to Ocwen, the servicer for the mortgage on her primary residence, for a loan modification. Ocwen denied the request in February 2010. One year later, Ocwen sent Palermino a Notice of Default. Prompted by Ocwen, Palermino submitted another loan modification application in March 2011, then over the next several months fulfilled several requests by Ocwen for additional

documentation in support of the application.  In August 2011, however, Ocwen referred her account to its foreclosure department.  "To avoid the impending foreclosure sale," Palermino liquidated her retirement account and paid Ocwen a lump sum to reinstate her mortgage.  Second Am. Compl. ¶ 18, ECF No. 44.  Ocwen informed her, through a reinstatement quote, that her reinstatement payment would resolve "all outstanding arrears, fines and fees."  *Id.* ¶¶ 18-20; *see also id.* Ex. 12, Reinstatement Quote, ECF 44-13.  Nevertheless, Ocwen continued to demand payment for expenses related to the foreclosure.

In June 2012, Palermino filed for bankruptcy to protect her interest in her primary residence and "to address the financial consequences related to the reinstatement of her Mortgage."  *Id.* ¶ 25.  Ocwen filed a proof of claim in the bankruptcy proceeding for arrears on the mortgage.  On November 8, 2012, Palermino submitted a third application for a loan modification and spent several months responding to requests for additional documentation from Ocwen personnel, including requests for replacement copies of documents lost by Ocwen.  On March 25, 2013, Palermino signed a loan modification agreement ("Modification Agreement") that increased the outstanding principal balance by adding unpaid interest, fees, escrow advances, and other costs to the principal.[1]  Based on the terms of the Modification Agreement and Ocwen's representations, Palermino believed that the modification had amortized all of the unpaid foreclosure-related expenses into the new, larger principal of her mortgage loan. Palermino made her first post-modification mortgage payment on April 1, 2013.  In May 2013, the servicing rights for her mortgage were then transferred from Ocwen to Nationstar Mortgage,

---

[1]  Palermino's Complaint states that she "accepted" the loan modification on January 28, 2014 and "ratified" it on April 25, 2013, Second Am. Compl. ¶¶ 30, 32, but her signature on the Modification Agreement is dated March 25, 2013.

LLC ("Nationstar").  Nationstar later informed Palermino that her account had more than $4,000 in arrears and that Ocwen had not credited the April 2013 payment to her account.

## II.     Procedural History

Palermino filed a Complaint against Ocwen and Nationstar in the Circuit Court of Montgomery County, Maryland on December 18, 2013, alleging violations of the MCPA, breach of contract, and negligence.  Ocwen removed the case to this Court on the basis of diversity jurisdiction.  Both Defendants filed Motions to Dismiss, which the Court (Motz, J.) granted with leave to amend the Complaint on the MCPA and breach of contract claims.  Palermino's First Amended Complaint was met with another round of Motions to Dismiss.  Nationstar then agreed on a settlement with Palermino and was dismissed from the case.  On January 30, 2015, this Court held a hearing on Ocwen's Motion to Dismiss, in which it granted the Motion but gave Palermino another opportunity to amend her Complaint.  The Court suggested that because during the hearing Palermino's counsel articulated facts that appeared sufficient to support MCPA and breach of contract claims, Ocwen should carefully consider the propriety of filing a third motion to dismiss.  Nevertheless, after Palermino filed her Second Amended Complaint on February 21, 2015,[2] Ocwen filed its third Motion to Dismiss on March 9, 2015.[3]  Palermino filed a Response in Opposition to the Motion on March 26.

---

[2]    Palermino's most recent Complaint is labeled "First Amended Complaint."  However, to distinguish it from the previous amended complaint, the Court will refer to it as the Second Amended Complaint.

[3]    Palermino filed the Second Amended Complaint approximately five hours after the deadline established by the Court.  Palermino attributed the delay to computer difficulties and requested an extension.  Given the short duration of the delay and the lack of prejudice to Ocwen, the Court finds the delay to be the result of excusable neglect, grants the extension, and accepts the Second Amended Complaint.  *See* Fed. R. Civ. P. 6(b)(1)(B); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

**DISCUSSION**

**I.     Legal Standards**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Palermino attached a number of exhibits to her Second Amended Complaint. Ordinarily, courts cannot consider matters outside of the pleadings on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). However, courts may "consider documents attached to a complaint . . . so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citation omitted). The two documents discussed below—the Reinstatement Quote and the Modification Agreement—meet that standard.

Palermino's MCPA claim must satisfy Rule 9(b)'s heightened pleading standard. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *Harrison v. Westinghouse*

*Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 (2d ed. 1990)).

## II.     Maryland Consumer Protection Act

Palermino alleges that Ocwen violated the MCPA by making various false and misleading statements during the process of reinstating and modifying her mortgage. The MCPA prohibits the use of an "unfair or deceptive trade practice" in the "[t]he extension of consumer credit" or "[t]he collection of consumer debts." Md. Code Ann., Com. Law § 13-303(4)-(5). To state a claim under the MCPA, a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury. *Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 796 (D. Md. 2013). An "unfair or deceptive" trade practice includes a "false . . . or misleading oral or written statement . . . or other representation . . . which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1).

### A.     Statements Inducing Reinstatement and Modification of the Mortgage

Palermino's primary MCPA allegations are that Ocwen made false written and oral statements that induced her to reinstate her mortgage after it had fallen into default, and then, about a year and a half later, to enter into the Modification Agreement. She claims that Ocwen informed her, through its written quote for the reinstatement, that "paying a specific amount . . . would cure all of the arrears, including outstanding fines and fees," on her mortgage account. Second Am. Compl. ¶ 53(e); *see also id.* Ex. 12, Reinstatement Quote. Relying on Ocwen's representations, Palermino emptied her retirement account to pay for the reinstatement, but Ocwen then insisted that the charges had not been fully resolved. Similarly, Ocwen's

representations, including the terms of the Modification Agreement, led Palermino to expect that the modification would amortize all past due amounts into the mortgage principal. Palermino relied on these representations because she "invested all her efforts in the modification process," including taking on a significantly higher principal balance on the modified loan and "accruing additional significant fines and fees." *Id.* ¶ 53(d). She also suffered injuries resulting from Ocwen's conduct in the form of a lower credit score and "severe mental anguish, which manifested physically through headaches, sleep loss, and other physical symptoms." *Id.* ¶¶ 40, 43. Because Palermino alleges false or misleading statements upon which she relied to her detriment, the Complaint sufficiently pleads a violation of the MCPA. *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465-68 (D. Md. 2013) (holding that the plaintiff stated an MCPA claim by alleging that the defendant made misleading statements related to the reinstatement and modification of the mortgage, causing "emotional and physical distress," "late fees, attorney fees, and damage to his credit").

Ocwen's arguments do not alter this result. Ocwen does not dispute Palermino's allegations regarding the misleading statements that induced her to enter into the Modification Agreement, but it contends that the reinstatement quote was not misleading because it "only provides the total amount of payment made to reinstate." Mot. Dismiss at 8, ECF 45. Ocwen also claims that the charges Palermino argues were to be cured by reinstatement were actually incurred after reinstatement, and that her assertions of reliance and injury are insufficient. Ocwen's arguments, however, generally consist of denials of the allegations in Palermino's Second Amended Complaint, which, at this stage, must be assumed to be true. The Motion to Dismiss the MCPA claim is therefore denied.

B.     **Statements Inducing Palermino to Apply for Loan Modifications**

In the Second Amended Complaint, Palermino also alleges unfair trade practices during the application process for her loan modification. She alleges that Ocwen encouraged her to submit loan modification applications with the intent of denying at least some of them. Although the last of her three applications was granted, she had invested time and resources in previous applications, forgoing other options and accruing charges in the process. These allegations also state a claim under the MCPA. *See Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797-98 (D. Md. 2013) (holding that plaintiffs had adequately pleaded an MCPA claim where they alleged that the defendant solicited modification applications that it did not intend to consider, resulting in misallocated mortgage payments and new charges).

Ocwen contends that claims related to the loan modification applications are time-barred. MCPA claims are subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2014); *Greene Tree Home Owners Ass' n v. Greene Tree Assocs.*, 749 A.2d 806, 820-21 (Md. 2000). The limitations period starts to run when the plaintiff knew or reasonably should have known about the defendants' wrongful conduct. Md. Code Ann., Cts. & Jud. Proc. § 5-203; *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 975 (Md. 2000). Palermino filed her first loan modification application in February 2010, more than three years before she filed the original Complaint in December 2013. However, the first point at which she reasonably could have discovered Ocwen's alleged scheme was when Ocwen encouraged Palermino to submit a second loan modification application in early 2011, less than three years before she

filed suit. Consequently, Palermino's MCPA claim related to the loan modification application process is not time-barred. The Motion to Dismiss is therefore denied as to the MCPA claims.[4]

## III. Breach of Contract

Palermino alleges that Ocwen is liable for breach of contract for its failure to maintain a proper accounting of her mortgage following both its reinstatement and modification. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001).

### A. The Modification Agreement

Palermino asserts that Ocwen, as her mortgage servicer, had a "contractual relationship" with her relating to the servicing of her loan. Second Am. Compl. ¶ 56. She points to the Modification Agreement as one source of Ocwen's contractual obligation to maintain a proper accounting of the loan. According to Palermino, Ocwen breached the Modification Agreement by failing to roll the foreclosure-related fees into the principal of the loan and by failing to credit Palermino's April 1, 2015 post-modification payment.

Ocwen argues that Palermino does not identify a specific provision of the Modification Agreement that Ocwen is alleged to have breached. It also asserts that the Modification Agreement could not be the basis for a breach of contract claim related to the reinstatement, because the reinstatement occurred before the Modification Agreement was executed. Although

---

[4] Palermino's Second Amended Complaint reiterates the claim in her First Amended Complaint that Ocwen engaged in unlawful debt collection practices when it filed a proof of claim regarding foreclosure-related fees in Palermino's bankruptcy proceeding. As the Court indicated at the January 30, 2015 hearing, filing a proof of claim does not constitute debt collection under the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 to 14-204, so these allegations do not state a claim under the MCPA. *See Covert v. LVNV Funding, LLC*, No. DKC–13–0698, 2013 WL 6490318, at *6–8 (D. Md. Dec. 9, 2013).

the latter point is valid, Ocwen does not dispute that the Modification Agreement created contractual obligations relating to post-modification accounting. The failure to properly accept and credit mortgage payments would constitute a breach of contract, including of a valid loan modification agreement. *See Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 629 (D. Md. 2012) (referencing the court's previous ruling in the same case that, under Maryland law, a bank's refusal to accept monthly payments tendered by a mortgagor-borrower would constitute a breach of a loan modification agreement, as stated in *Yacoubou Adam v. Wells Fargo Bank, N.A.*, No. ELH-09-2387, 2011 WL 3841547, at *14 (D. Md. Aug. 26, 2011)); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690 (7th Cir. 2011) (rejecting the argument, "as a matter of law, that a lender is free to refuse a tendered payment and then to hold the borrower responsible for having failed to make the payment"). Ocwen also faults Palermino for failing adequately to plead damages, but a plaintiff does not need to plead damages as part of a breach of contract claim. *Taylor*, 776 A.2d at 651. Palermino has thus pleaded with sufficient specificity that Ocwen breached the Modification Agreement by failing to credit her account for payments made after the loan modification.

### B.     Intended Beneficiary

In addition to the Modification Agreement, there are two other sources of Ocwen's contractual obligations. First, the Complaint is fairly construed as asserting that Palermino was an intended beneficiary of the mortgage servicing contract between her lender and Ocwen. A plaintiff not in privity with a defendant can still sue for breach of contract so long as she was an intended beneficiary of the agreement. *Lovell Land, Inc. v. State Highway Admin.*, 969 A.2d 284, 295 (Md. 2009). Ocwen's status as Palermino's mortgage servicer supports the inferences that Ocwen had a contractual duty to maintain a proper accounting of her mortgage and that

Palermino was the intended beneficiary of this obligation. *See Allen v. Bank of America Corp.*, No. CCB-11-33, 2011 WL 3654451, at *8 (D. Md. Aug. 18, 2011) (holding that plaintiffs had stated a claim for breach of contract where they alleged they were the intended beneficiaries of a contract between their loan servicer and a company involved in processing their mortgage payments that had failed to make proper transfers of payments). Palermino has thus adequately pleaded a breach of contract claim with respect to Ocwen's alleged accounting failures following both the reinstatement and the modification.

### C. Promissory Estoppel

Palermino also pleads the elements of promissory estoppel, which "is an alternative means of obtaining contractual relief." *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011). A claim of promissory estoppel requires (1) a clear and definite promise; (2) a reasonable expectation that the promise will induce action or forbearance; (3) actual and reasonable action or forbearance; and (4) a detriment that can only be avoided by enforcement of the promise. *See Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996). Palermino claims that she reasonably relied on Ocwen's "clear and definite promises" regarding the effect that reinstatement and modification would have on her foreclosure-related charges, by assenting to those agreements and making additional payments. Second Am. Compl. ¶¶ 58-62. She alleges that this reliance injured her because her unpaid charges and fees were not cured or amortized, her post-modification payment was not credited, and her credit rating suffered. These allegations sufficiently allege promissory estoppel. *See Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, at *8 (holding that plaintiffs stated a claim for promissory estoppel where they alleged that their mortgage servicer had promised that, if they complied with the terms of a Trial Period Plan agreement, the servicer would grant a permanent

loan modification and not report them as delinquent to credit reporting agencies, and that they detrimentally relied on the promise by forgoing other options such as selling their home).[5]

Through the combination of the three theories discussed above, Palermino has adequately pleaded a breach of contract claim stemming from Ocwen's failure to maintain a proper accounting of her mortgage loan in the wake of its reinstatement and modification. The Motion to Dismiss is denied as to the breach of contract claim.

## IV.     Home Affordable Modification Program

In the Second Amended Complaint, Palermino alleges for the first time several instances in which Ocwen failed to comply with the guidelines of the federal Home Affordable Modification Program ("HAMP"). HAMP aims to reduce foreclosures by encouraging lenders to refinance or otherwise modify mortgages. *See Spaulding*, 714 F.3d at 772-74. There is no private right of action under HAMP, but state law claims are not barred simply because they have some nexus with HAMP. *Id.* at 776 n.4; *see also Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, at *5. Thus, although Palermino has asserted sufficient facts to state plausible MCPA and breach of contract claims, *see supra* parts II-III, she may not proceed under the theory that violations of HAMP guidelines, in and of themselves, support MCPA or breach of contract claims.

---

[5] The Court disagrees with Ocwen's argument that these allegations are merely a claim of fraud insufficiently pleaded. Promissory estoppel is a distinct theory grounded in the law of contracts. Fraud is not an element of promissory estoppel, *Pavel Enters., Inc.*, 674 A.2d at 532 n.29, so Rule 9(b)'s heightened pleading requirement does not apply.

## CONCLUSION

For the foregoing reasons, Ocwen's Motion to Dismiss is DENIED. A separate Order follows.


Date:  October 26, 2015                                          /s/
                                                THEODORE D. CHUANG
                                                United States District Judge